# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP MALDONADO, | : | Civil No. 1:21-CV-00324 |
| Petitioner, | : | |
| v. | : | |
| BARRY SMITH, *et al.*, | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 filed by Phillip Maldonado. (Doc. 1.) For the reasons set forth below, the court will dismiss the petition.

### PROCEDURAL HISTORY

Phillip Maldonado ("Petitioner") is a self-represented litigant who filed a petition for writ of habeas corpus seeking relief from his state court judgment with this court in February of 2021. (Doc. 1.) The procedural history of Petitioner's state criminal convictions and subsequent appeals are properly summarized in the memorandum entered by the Pennsylvania Superior Court on June 23, 2020. *Commonwealth v. Maldonado*, 237 A.3d 1079, 2020 WL 3441251 (Pa. Sup. June 23, 2020). The court will provide the following brief summary: On May 16, 2014, Tiffany Hoover ("Hoover") purchased drugs from Petitioner at his home. *Id.* at *1. Petitioner introduced her to Julio Rivera ("Rivera"), and asked her if she wanted to

1

make some money. *Id*. Hoover understood this as having sex or "doing other things" with Rivera. *Id*. Hoover testified that she observed that Rivera had bags of heroin that he purchased from Petitioner; bags identical in appearance to bags she purchased from Petitioner. *Id*. Rivera and Hoover then drove to a motel in Lebanon together smoking crack cocaine that they purchased from Petitioner. *Id*. When they got into the motel room, Hoover stated that she injected heroin that she had purchased from Petitioner, while Rivera sniffed his heroin. *Id*. When the two ran out of heroin, Hoover contacted Petitioner to purchase more heroin at Rivera's request. *Id*. Petitioner came to the motel in a taxicab and delivered an additional four bags of heroin. *Id*. Hoover helped Rivera inject one bag of heroin; shortly thereafter, she observed him get sick and then go into a sleepy state. *Id*. At that point, Hoover stole some of Rivera's property and left. *Id*. The next morning, the motel's assistant manager found Rivera dead in the room and contacted the police. *Id*.

Following a jury trial, Petitioner was found guilty of drug delivery resulting in death, conspiracy to commit drug delivery resulting in death, possession with intent to deliver a controlled substance, and involuntary manslaughter. *Commonwealth v. Maldonado*, No. CP-38-CR-0000656-2015 (last accessed on May 2, 2023: https://ujsportal.pacourts.us/CaseSearch). On August 31, 2023, Petitioner was sentenced to an aggregate term of incarceration of not less than nine

or more than nineteen years to be served consecutively to another term of imprisonment Petitioner was sentenced to in an unrelated action. *Commonwealth v. Maldonado*, 237 A.3d 1079, 2020 WL 3441251 at *3.

On September 8, 2016, Petitioner filed a notice of appeal and a concise statement of errors complained of on appeal. *Id*. at *4. The Superior Court of Pennsylvania affirmed the judgment of sentence on June 13, 2017. *Id*.

On December 20, 2017, Petitioner filed his first Post Conviction Relief Act ("PCRA") petition *pro se*, and the PCRA court appointed counsel on December 21, 2017. *Id*. Following a hearing, the petition was denied on December 13, 2019. *Id*. at *5. This denial was timely appealed on January 10, 2020 to the Superior Court of Pennsylvania. *Id*. In the appeal, Petitioner raised eleven claims of ineffective assistance of trial counsel. *Id*. On June 23, 2020, the PCRA court's denial of the petition was affirmed. *Id*. at *10.

Petitioner filed the instant petition in February of 2021 raising multiple grounds for relief. (Doc. 1.) The court acknowledges that the petition is difficult to decipher, but will attempt a summary of the grounds raised. The first ground is identified as Sixth and Fourteenth Amendment violations "based on [ineffective assistance] of trial and direct appeal counsels;" Sixth Amendment "secured autonomy right violation;" and "*Apprendi* violation." (*Id.*, p. 5.) Then when

prompted about the supporting facts, Petitioner provided an extensive list of additional claims:

> a. Conflict of interest where trial counsel "cross-examined" Petitioner in prior case calling him a liar; b. counsel failed to investigate, discover, object to, present and assert Tenth Amendment federalism/commandeering violations under voitis/JAG/Opioid abuse federal programs; c. Failure to ensure sentence imposed pursuant to *Apprendi/Alleyne/Hurst* with jury finding fact increasing "floor" and "ceiling"; d. 40 yrs. Maximum for DDRD should have been challenged as violation of 10th Amend; e. Deprived Petitioner of 6h Amend – secured autonomy right to set objective of defense to maintain innocence when counsel moved for involuntary manslaughter without discussing strategy with Petitioner or getting Petitioner's consent to do so; DDRD is a "strict liability" offense carrying only small penalty or fine and is facially and as applied void for vagueness by not charging *mens rea*, by being enforced as crime akin to third-degree "malice" murder, and by being arbitrarily capriciously, maliciously, and racially enforced against a disparate and disproportional number [] of people of color.

(*Id*.)  The second ground is identified as Sixth and Fourteenth Amendment "violations of [ineffective assistance of counsel] for failure to a[d]vocate and interview, investigate and, and call witnesses." (*Id*., p. 6.)  The third ground is identified as a Sixth, Tenth, Eighth, and Fourteenth Amendment "denial of 'autonomy' to set objective of defense; cruel and unusual punishment of denial of federalism anti-commandeering rights and *Apprendi* rights." (*Id*., p. 8.)  The fourth ground is identified as Fourth, Sixth, Eighth, Tenth, and Fourteenth Amendment violations.  (*Id*., p. 9.)  This is again followed by a litany of various claims similar to those raised under ground one with the addition of a claim that he was deprived

of the Sixth Amendment right of a unanimous verdict, a confrontation clause violation, and the assertion that all the aforementioned violations have resulted in him being imprisoned under unconstitutional conditions. (*Id*., pp. 9–10.) Petitioner requests the appointment of counsel and release and discharge. (*Id*., p. 14.)

Respondents filed their response on September 17, 2021. (Doc. 11.) Petitioner filed his traverse on December 1, 2021. (Doc. 12.) The petition is now ripe for the court's review.

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced. 28 U.S.C. § 2241(d). Petitioner was convicted and sentenced in Lebanon County, Pennsylvania, which is located in this district. Therefore, venue in this district is proper.

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting

5

habeas relief is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## DISCUSSION

### A. All of Petitioner's Claims Except the Ineffective Assistance of Counsel Claims are Unexhausted.

The court must first determine whether Petitioner's grounds for relief presented in his § 2254 petition have been exhausted in the state courts and, if not, whether circumstances exist to excuse Petitioner's procedural default of his claims.

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).  Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, (1999).  A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings.  *See id.* at 845.  In addition, a claim is exhausted when it has been "fairly presented" to the state court.  *See Picard v. Connor*, 404 U.S. 270, 275 (1971).  To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts."  *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).  The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted."  *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005).  "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond

7

a petition or brief . . . in order to find material' that indicates the presence of a federal claim." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies. *See* 28 U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism, while reducing "piecemeal litigation." *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

Here, each of the four grounds raised in the petition are mixed claims that contain a multitude of alleged constitutional violations and series of facts. (Doc. 1.) Therefore, not a single ground, as raised in the petition, has been exhausted. However, in the interest of justice and in consideration of petitioner proceeding pro se in this action, the court will parse out those claims that have been exhausted and address those on their merits. The remaining unexhausted claims will be dismissed.

The sole claims that have been exhausted are those ineffective assistance of trial counsel claims addressed by the PCRA court:

> [1.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] failed to interview and call Eric Michael Livering as a witness as he would have testified that Tiffany Hoover informed him that she cut the drugs that she used to inject into the victim that ultimately killed him?

8

[2.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] failed to interview or call the following witnesses to rebut Tiffany Hoover's testimony that she provided at trial regarding what happened on the day in question: Racheal Pilkington; Christine Shaw; and Samantha Santiago?

[3.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] failed to file a motion to allow [Petitioner] to have a new preliminary hearing when [Petitioner] was not granted his promise to be returned to the Lancaster County Prison in return for [Petitioner] waiving his preliminary hearing?

[4.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] failed to file a Petition for Writ of Habeas Corpus to attack the Commonwealth's establishment of a prima facie case?

[5.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] asked the [trial c]ourt to include the offense of Involuntary Manslaughter?

[6.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] failed to have confidential face-to-face communication with him while preparing for trial?

[7.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] failed to properly cross-examine Tiffany Hoover regarding the numerous variations of her story?

[8.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to provide a proper defense for [Petitioner]'s trial by failing to obtain the [m]otel surveillance video and taxi records to prove that [Petitioner] was not present at the [m]otel when the drugs were given to the victim that resulted in his death?

>[9.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] failed to obtain the victim's phone records to prove that he was contacting other drug dealers on the night in question?
>
>[10.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [t]rial [c]ounsel should have filed a Suppression Motion regarding the fact that the Commonwealth reviewed the phone records prior to the search warrant being filed?
>
>[11.] Whether the [Petitioner] was denied his constitutionally guaranteed right to effective representation when [Petitioner] avers that [trial counsel] was a conflict of interest to the case as he cross-examined [Petitioner] in a previous case where [Petitioner] was a Commonwealth witness?

*Commonwealth v. Maldonado*, 237 A.3d 1079, 2020 WL 3441251, at *6–7. Therefore, all the other claims raised in the petition are unexhausted and will not be entertained by the court pursuant to 28 U.S.C. §2254.

In his reply, Petitioner argues that 28 U.S.C. § 2254 is unconstitutional relying on *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). (Doc. 12, pp. 2–6.) The court in *McGirt* addressed a longstanding rule that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country.'" *McGirt*, 140 S. Ct. at 2459 (citing *Negonsott v. Samuels*, 507 U.S. 99, 102–03, (1993)). The question the Supreme Court answered in the holding was "whether the land . . . treaties promised [the Creek Nation] remain[ed] an Indian reservation for purposes of federal criminal law." *McGirt*, 140 S.Ct. at 2459.

As part of his § 2255 reply, Petitioner copied the following final paragraph out of *McGirt*:

> The federal government promised the Creek a reservation in perpetuity. Over time, Congress has diminished that reservation. It has sometimes restricted and other times expanded the Tribe's authority. But Congress has never withdrawn the promised reservation. As a result, many of the arguments before us today follow a sadly familiar pattern. Yes, promises were made, but the price of keeping them has become too great, so now we should just cast a blind eye. We reject that thinking. If Congress wishes to withdraw its promises, it must say so. Unlawful acts, performed long enough and with sufficient vigor, are never enough to amend the law. To hold otherwise would be to elevate the most brazen and longstanding injustices over the law, both rewarding wrong and failing those in the right.

140 S.Ct. at 2482. But, he reproduces the paragraph substituting in § 2254 instead of treaties and asserts that Congress did not specifically nullify prior federal habeas corpus laws when passing § 2254, which he accurately identifies as Title I of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> As a result, many of the [Respondents'] arguments before [the Court] today follow a sadly familiar pattern. Yes, [non-suspension] promises were made, but the price of keeping them has become too great, so now [Courts] should just cast a blind eye. [This Court must] reject that thinking. If Congress wishes to withdraw its promises, it must say. Unlawful acts, [say, application of Title I of AEDPA] performed long enough [say, since 1996] and with sufficient vigor, are never enough to amend the law [of the Habeas Corpus Acts of 1789 and 1867]. To hold otherwise would be to elevate the most brazen and longstanding injustices over the law, both rewarding wrong and failing those [like Petitioner] in the right.

11

(Doc. 12, p. 5.) He does not assert that he is either a member of any tribe or that the criminal offenses he was convicted of took place in Indian country. (Doc. 12, pp. 2–6.) Therefore, the Supreme Court's holding in *McGirt* is inapplicable to this case. Those unexhausted claims will be dismissed.

### B. The State Court's Treatment of the Ineffective Assistance of Counsel Claims was Reasonable.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI. The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. 466 U.S. at 687. "*Strickland'*s first prong

sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances[.]'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland*, 466 U.S. at 687. To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak*

*v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

In addressing Petitioner's specific claim of ineffective assistance of counsel, the Superior Court applied the governing test for ineffective assistance of counsel claims announced by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). *Commonwealth v. Maldonado*, 237 A.3d 1079, 2020 WL 3441251, at *7 (citing *Commonwealth v. Medina*, 209 A.3d 992, 1000 (Pa. Super. Ct. 2011) (applying *Pierce* ineffective assistance of counsel test)). The United States Court of Appeals for the Third Circuit has determined that the *Pierce* test conforms to established federal law and is "not contrary to the *Strickland* test." *Henderson v. DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005) (citing *Werts v. Vaughn*, 228 F.3d 178, 203–04 (3d Cir. 2000)) (recognizing the *Pierce* test as materially identical to the *Strickland* test). Therefore, the Superior Court's applied test is not "contrary to" the test established in *Strickland*.

Nor does the Superior Court's analysis constitute an objectively unreasonable application of federal law. *See Knowles*, 556 U.S. at 123. First, the denials of Petitioner's initial two claims regarding the failure to call certain witnesses were affirmed because Petitioner had failed to establish that these four

15

individuals were willing to testify for the defense, and the state court highlighted that none of them were called the testify at the PCRA hearing. *Commonwealth v. Maldonado*, 237 A.3d 1079, 2020 WL 3441251, at *7. Therefore, there was no evidence to support either prong of *Strickland*.

Second, when addressing the alleged ineffective assistance of trial counsel associated with the failure to request a new preliminary hearing after Petitioner initially waived his preliminary hearing in the belief that he would be transferred from Lebanon County Prison to Lancaster County Prison if he agreed to the waiver, the Superior Court found that Petitioner failed to establish how having a preliminary hearing would have resulted in a different outcome at his trial. *Commonwealth v. Maldonado*, 237 A.3d 1079, 2020 WL 3441251, at *7. Therefore, this fails the second prong of *Strickland*.

Third, when addressing the alleged ineffective assistance of trial counsel associated with the failure to file a petition for writ of *habeas corpus*, the PCRA court points out that Petitioner did not demonstrate that the evidence presented at trial was any different than that presented at the preliminary hearing. *Id*. Therefore, the fact that this same evidence satisfied the burden of proof beyond a reasonable doubt at trial negates any argument that it would have failed to fulfill the lower burden of proof at a preliminary hearing. *Id*. Again, this fails the second prong of *Strickland*.

Fourth, when addressing the introduction of the charge of involuntary manslaughter at the end of the trial, the PCRA court points out that Petitioner was not convicted or sentenced for involuntary manslaughter, therefore the argument lacks merit. *Id*. at *8. Once again, this fails the second prong of *Strickland* regarding a different outcome at trial.

Fifth, when addressing the argument that Petitioner was denied the constitutional right to effective representation in regards to trial counsel's failure to have confidential face-to-face communication with Petitioner while preparing for trial, the state court found that this argument was not supported by the evidence presented at the initial PCRA determination. *Id*. Actually, Petitioner met personally with his trial counsel prior to the trial and the two exchanged numerous written correspondence. *Id*. Therefore, the state court's determination amounted to a finding that Petitioner's argument failed the first prong of *Strickland*.

Sixth, in response to Petitioner's claim that trial counsel failed to properly cross-examine Hoover, the state court found that the cross-examination of Hoover was sufficient, stating "we fail to see what more he could have asked to impeach her testimony." *Id*. at *9. Therefore, the court found that this argument also failed. *Id*. Again, this amounts to the state court finding that Petitioner had failed the first prong of *Strickland*.

Seventh, when the state court addressed trial counsel's failure to obtain surveillance videos and taxi records to prove that he was not present at the motel when the drugs were administered to Rivera it found that trial counsel had questioned the police witness about the existence of any videos, and he stated that he did not believe there were such videos. *Id*. The state court found that the record on appeal failed to include any taxi records, and the burden to produce a complete record fell on Petitioner. *Id*. Therefore, this too amounts to a failure on the first prong of *Strickland*.

Eighth, the state court found that trial counsel's failure to gather Rivera's phone records did not amount to ineffective assistance of counsel for two reasons. *Id*. at *10. First, like the taxi records, Petitioner had failed to include these records on appeal, so there was no way to judge how such evidence would have changed the outcome of the trial. *Id*. Second, there was no assertion or evidence presented that even if these records showed Rivera had other drugs delivered that Petitioner did not deliver the deadly dose. *Id*. Therefore, this amounts to a failure of the second prong of *Strickland*.

Ninth, the state court found that Petitioner's claim that trial counsel failed to suppress Rivera's phone records was unsuccessful because even without these records, there was sufficient evidence to support the guilty verdict. *Id*. This also amounts to a failure of the second prong of *Strickland*.

Finally, Petitioner asserted that trial counsel had a conflict of interest because he had previously cross-examined Petitioner in a prior case. *Id.* The state court found that since this was successive representation, and not dual representation, Petitioner was required to show that he was prejudiced by the potential conflict of interest. *Id.*, *citing Commonwealth v. Cousar*, 154 A.3d 287, 310–11 (Pa. 2017). The state court found that Petitioner failed to provide any assertions of prejudice. *Id.* Therefore, this amounts to a failure of the second prong of *Strickland*.

In reviewing the state court's treatment of all the ineffective assistance of counsel challenges, the court finds that the application of *Strickland* was reasonable. Therefore, it will not disturb the state court's determinations, and will dismiss the petition.

**C. A Certificate of Appealability Will Not Be Issued.**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, no COA will be issued.

## Conclusion

For the reasons set forth above, the court will dismiss the petition for writ of habeas corpus will be dismissed.

A separate order will be issued.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: June 13, 2023